You're on. First case on the docket this morning is 2-18-0953. People of the state of Illinois, Plankton v. Johnston, Conley v. Bennett-Pellett. Argument on behalf of Mr. Bennett-Pellett, Mr. Seth G. Wiggins. Argument on behalf of Plankton, Mr. Johnston J. Sheppard Jr. Mr. Wiggins, you may proceed. Your Honor, before the court today are three questions presented. First, whether the trial court erred in finding that the appellant failed to state a cause of action in his petition for judicial review and dismissed the petition on that basis. And second, whether the trial court erred in finding that the appellant was required to exhaust all administrative remedies prior to bringing a complaint. And third, whether the relief requested in the appellant's petition was available to the appellant. So turning to the first issue, the requirements... Let's start with the third issue, because if the third issue doesn't exist, doesn't that make moot or meaningless or immaterial or irrelevant, the first two? If you can't grant relief, then isn't everything moot? I would concede as much, yes, Your Honor. However, turning to that third issue then, that is request, is... It may be a simple question, which is, they sent him to a drug abuse counselor or something. Who knows? Sure. Sure. So the relief requested, there were, I believe, five different reliefs requested. The... Whether the guardian under 725 ILCS 205, Section 8, so that's the statute we're living in for the purposes of this petition for judicial review and care, and it charges that the IDOC shall be the guardian of a civil committee while committed under the Sexually Dangerous Persons Act. It also charges that while in IDOC's care, the committee shall be provided with treatment to affect their recovery also in as brief a time as possible. So the relief requested is that the court make a finding that the IDOC had failed to provide care adequate to affect recovery. That, just even on that premise, there was relief which was available if the trial court had not erred in dismissing the petition for judicial review of care and treatment. So had, procedurally, the court allowed the petition to go to hearing, and that could have denied, the substantive claims could have denied on that basis, but had it at least gone to hearing instead of first dismissing it in error, it would have been able to, if it did grant the petition, grant error, or I'm sorry, grant a remedy, being that it may be finding that the IDOC was not providing adequate care, which is part of the relief requested in the petition. Well, but not providing adequate care isn't really a relief. It's a finding. The way I think things are phrased, it's a finding of fact that you'd like us to make or the trial court to make, and that's, I mean, what's it going to get them if they're not providing relief? I mean, if a court found that, what's going to happen? Well, Your Honor, if the court would make a finding that there was not, that there was inadequate care provided, that IDOC was not performing the function charged to its responsibility under that statute, then that could unleash a way for a future action, possibly under Section 1983, such as a state interviewee would propose this petition was, which it is not, but it could give way for further complaints to be filed under different statutes. Here, what was simply asked is to make a finding that the care was inadequate, which is the purpose of a petition for judicial review of care and treatment, and it's particularly prescribed that a trial court may do that pursuant to McDougall in 1999 and providing the framework for what must be in that petition in CASMIN 2 in 2015. Well, there was a sex offender treatment plan in this case, correct? That is correct, Your Honor, yes. And it was, according to, I believe, most of the record, being followed as it was written.  Yes, Your Honor. All right. And so what wasn't in it and what he believed, what Mr. Conley believed was necessary, was some sort of substance abuse treatment, correct? I would say ultimately that premise is correct. However, not conditioned on it being Mr. Conley, the appellant's belief, but stated in his cause of action that it was the belief of three separate treatment providers who are qualified under the appropriate boards. And did he ever bring an action within the confines of administrative review to have those people present their evidence so the plan could be changed? Well, Your Honor, to answer that, I would pivot a little bit. Now we're going into the second issue. Sure, sure, and I'm happy to address that. The second issue ultimately stated differently is does the Prisoner's Litigation Reform Act apply here? Okay, so Prisoner's Litigation Reform Act, cited at 42 U.S.C., Section 1997E, and it says before a prisoner can bring a complaint, and here I would concede that appellant, Mr. Conley, falls within the statutory definition of prisoner. So we're there. Can he bring a complaint before exhausting all administrative remedies? No, if he files a Section 1983 complaint or a complaint under any other federal law. Here, neither are present. One, this is filed under a state statute at 725 ILCS 205E, not federal law, so that's off the table. The next inquiry then is, okay, but is this kind of a disguised 1983 action? Is the appellant ultimately saying, I've been deprived of a constitutional right by an actor acting under the color of the law? IDOC is acting under the color of the law. However, is it a constitutional, a deprivation of constitutional rights? Pleaded in this petition for review of judicial care and review. No. The 725 ILCS 205E is a statute that was called into question in McDougal in 1999. It said, okay, there's a statute that says, IDOC, here's what you're supposed to do. Here's your responsibility for civil committees. What if they're not meeting that challenge? How can we get review? There should be judicial review. And in McDougal, that court said an appellant, a litigant, should be able to ask a court to review the care. When it did that, it made a distinction between a Section 1983 act. If it instead thought asking a court to review a care of a civil committee was something charged under Section 1983, it would not have carved out a holding saying you can bring a petition for judicial review and care. So in so doing, it made the distinction that this is not a Section 1983 act complaint. And if it's not Section 1983, and because it's brought under state statute, so therefore not any other Federal law, then the Prisoner's Litigation Reform Act is not applicable here. Without that trigger, the exhaustion requirement need not be satisfied. You said earlier that the finding, which Justice Hutchinson referenced as being a finding and not damages or a remedy, and you seemed to agree with her, and it sounded to me like what you were saying was that this was, in effect, a declaratory judgment where rights are being determined, not necessarily remedies are being determined. Am I correct in my understanding of what you were saying or not? I'll ask more questions so that it won't appear that I'm leading you down a wrong path. You later say that the administrative exhaustion isn't required if it's based upon a Federal statute. Correct? No, that's not what I said, Your Honor. It is required only when it's Section 1983 or Federal statute. However, this petition is brought under state statute. It's the argument I'm pursuing. So, therefore, it's not Federal law, and, therefore, it does not trigger the PLR. I see. Okay. Now, as to your question, is this really? Well, I'll take it. I'll take what you give me. Okay. And that is that, okay, so it's a state law that you now are claiming that doesn't require administrative review. Correct, Your Honor. And what state law would that be that would supposedly give you a remedy that you were seeking, other than the mere declaration of rights? The petition is brought under state statute. And case law says that you're able to, based on that state statute and the fact that it charges a responsibility upon DOC, you're able to have judicial review. It's not necessarily asking for anything to be addressed constitutionally, anything to be addressed where there is a remedy granted by the court, but just review of the care and treatment. That's settled law that that is allowed pursuant to that statute, which is what the appellant is asking for in this petition. It seems like you're creating a situation where you're claiming that you have the right to have judicial review to determine if you have a right to file suit under some other statute and seek some form of relief that you're not seeking or you're not requesting in this particular proceeding, which means it sounds like you're talking about litigation in more than two proceedings. Am I wrong? That's what you seem to be saying. Your Honor, I could clear that up. I may have not articulated myself well. I do that often enough. The trial court here held that there is not a cause of action statement. Let's assume for the moment that he said that the program that the Guardian was doing wasn't done properly. And then it seemed to me that you said, well, then I could bring litigation under some other statutes. Right? Isn't that what you said? If I obviate that previous statement. Wouldn't that be another count in this lawsuit, what that statute is and what the remedy is? Why wouldn't that be included in this litigation? Well, let me step off that previous statement and let me release any point I was trying to make there and instead make this point. With the petition for judicial review and asking that there's a trial court that reviews whether DOC is upholding its responsibilities of providing that adequate care or treatment, if it makes a finding that it in fact was not, that would at least bear a judicial requirement of compliance from DOC. So there's still relief that is able to be given pursuant to this petition. By making a finding that the care was not what is charged in the statute, it would then beg compliance that it come into what is charged with the statute, which is the adequate care to effect the recovery of the appellant or the committee in a brief amount of time as possible. If I can cite to a tort, duty, breach of duty, damages approximately caused. You seem to be saying duty, breach of duty. But I don't know where or what you've alleged that would suggest what the damage are that have been approximately caused because you haven't said what the trial court hypothetically was going to say if it said that there hasn't been compliance. Now, I understand that it's somewhat speculative because there was no hearing. But my point is I would like to know what your client believes if there had been a hearing and the trial court had made a finding that, yes, there was a breach of the duty. What would the court then proceed to determine were the damages that were approximately caused? Or put another way, what were the damages that you were seeking? That, Your Honor, that if the trial court had the ability to review and find that there's inadequate care, that it could then direct the DOC to supply the care that is charged in the statute with providing to the appellant. So you're talking about a mandate, Mr. Strick? Perhaps. The fact that the statute prescribes a certain duty upon someone bears the assumption reasonably that if someone is derelict of that duty and found by a judicial body to, in fact, be derelict, that that responsibility can then be asked to come into compliance. Otherwise, there's no mechanism by which the statute even serves itself. For instance, let's say that he wants to have visitation with his children and they're not allowing him. Wouldn't that be a claim for relief and ask that that happen? I don't believe that that would be. The statute in front of this court is the 725 ILCS 2058, which is simply whether the care or treatment is adequate. So even if what you're saying, the relief requested there, may not be allowed per statute, that's not dispositive as to whether or not the petition for judicial review of care and treatment is allowed. It was more of the nature of an analogical remedy that you could request if, in fact, you felt that there was some breach that the guardian or the DOC was not complying with a statute in question. And I'm unfortunately not prepared to answer that hypothetical without knowledge as to that particular statute. Do you think that if there was administrative review that none of these conundrums would have arisen? You can answer the question. And can you? Because I should make a record, Justice Zinoff is not able to be present today. She has read the briefs and she will review the oral argument and will confer with the panel relative to the final disposition. And because of that, we had to ask questions on her behalf. So I will allow you to answer more questions because since there's one-third less judges, you probably have effectively more time to answer questions in the time allotted. Thank you. And, Your Honor, I apologize, but if you could re-ask the question before the brief. I don't remember. Okay. No. You can re-ask it because I have a question. Okay. You may. Okay. Go ahead. While McDougall says that a judicial review might be appropriate or is appropriate, it doesn't say that administrative review isn't appropriate. And why does why, if this, if he has these three providers who say that he needs this care, this treatment, why doesn't he go through the grievance process? Has he ever tried to go through the grievance process first? And I think the answer to that from this record is no. Correct? Yes, Your Honor. From the record, I would say that. Right. So why didn't he? Why doesn't he? I believe the question before the court doesn't even necessarily need to answer why he doesn't. The answer is, is he charged with that responsibility by statute? And he would be if the PLRA applied. It's not a Section 1983 action and it's not brought under Federal law, so that's not even necessarily a question which would bar his litigation. But how exactly can a court who is not going to hear necessarily that evidence in a declaratory that these, what these three providers said and why they said it and how they said it and what they meant, all of those things, how exactly can they tell, we tell, or the trial court tell the Department of Corrections, you do this or else? What's the or else? How can the judicial branch tell the executive branch, you shall do this? Well, I would agree with the ultimate point that I believe it's an imperfect situation because there's not necessarily anything on point claiming the judiciary with what to do. There is nonetheless a statute that requires of the DOC a certain responsibility that if not met needs, there needs to be some sort of judicial review for that and that's set of law that that's allowed. Right. But even if the judicial review comes up with the conclusion that it is not, the treatment is not up to par, is not appropriate for this detainee, doesn't that put it back in the Department of Corrections' barnyard, basically? And then they have to go through that process. So why are we skipping that process in the first place? All the trial, all the trial court, all this court could do, if they could do it, would be to say it's not adequate. What does that mean? It means you go through the process that is outstanding and present in the system, which is the grievance process. That may be true ultimately, Your Honor. I can't necessarily deflect the possibility of truth there. However, what I would say is the question posed is whether the trial court erred and not even procedurally allowing it to go to hearing to then find that. Here we have a statute which allows for a petition to be brought. The appellant brought that petition. He was not barred from bringing that petition because the PLRA does not apply to the reasons I've stated, and therefore the petition should have gone to hearing. Procedurally, the court could deny it, or the court could say take it under judicial advisement and see if there's any other statute to reconcile the situation here. However, it was error to not even allow the petition to go to hearing and to dismiss specifically for a failure to state a cause of action where it met the forefront test in Katzmann. Her question was similar to mine, a little more direct. My point was we have asked you questions that the answers seem circumspect and vague. And if there had been administrative review where you were actually talking to the alleged opposing side or opposing party and you had alleged, for instance, that a drug abuse program should be provided, it's quite possible that the solution or at least a determination of why a solution was unavailable or denied would be made of record such that when it comes before us, we can then decide whether or not it was error or not. All the questions that I was asking you were asked based upon what is the relief that you're seeking. You were very ambiguous when it came to delineating specifically what it was. If I was the DOC, the guardian, so to speak, if I was an employee of the DOC and I was asking those questions, I might have some idea of what it is that you're complaining about and make some suggestions, which I can't personally do as a judge, but they can. So the point is, as Justice Hutchinson was implying, if she didn't say it directly, is it's much more efficacious to go through administrative review where you're talking to the person that you're complaining about and see if they can resolve the problem very simplistically instead of having to go through this process. Your Honor, may I just comment summarily? You can respond to that if you like. I think Justice Hutchinson could also address a question that you posed to me. Let's take the hypothetical. Let's say the appellant did go through the administrative review process and exhausted all administrative remedies and still had the same complaint that I've got this drug problem. Three providers said so. I've named them. I can call them to hearing if this goes to hearing. I need some relief. Now, if he exhausted all administrative remedies and was still there and brought the petition for judicial review of care and treatment under the same statute, we would be in the same situation that Justice Hutchinson asked about. What relief would the court then give? What relief can the court give? He's exhausted all administrative remedies. They can say, yeah, okay, care is not adequate. There's still not necessarily remedy it can give, even with the exhaustion of administrative remedies. So I don't think we can say, well, you can't bring this petition, Mr. Appellant, because we can't really grant you relief, because even if the exhaustion of remedies was completed, the court still may be deficient in relief that it can give from the bar, from the bench. It seems like what you're saying is you're disagreeing with our argument because it seems like your position seems to be that we have greater abilities to grant relief now, even though we don't know what the problem is or whether it's remedial, than if it went through an administrative hearing, there was a record prepared, and we reviewed the record, saw what the alternatives were, and then ordered an affirmative or a negative injunction against the DOC to attempt to effect appropriate relief. That's what it seems like you're saying to us, that it's more efficacious to come here and speculate than it is to go there and not speculate, prepare a record, and then come to us and seek relief based upon what the record shows. Your Honor, instead, the point that I was trying to make is whether we don't exhaust administrative remedies and we're standing right where we are now, or he had exhausted all administrative remedies. If the point is true, such as was embedded in the question by Justice Hutchinson, that the bench doesn't really have any way to grant remedy, so too would it be true even after exhausting remedy. If the overarching point is that there's no remedy available here, even upon review of care and treatment, that even if the court found that it was deficient, there's no remedy, and that's why there's not a stated cause of action. There's not remedy upon which it can be granted. Okay. Thank you, sir. Your time's up. Thank you. You may proceed. Good morning, Your Honor. May it please the Court. Good morning, counsel. Jonathan Sheffield, Assistant Attorney General, representing the appellee. For three independent reasons, this Court should affirm the dismissal of Connell's motion for judicial review of his treatment as a sexually dangerous person. First, Connell failed to exhaust his administrative remedies before he sought judicial review. The exhaustion doctrine effectively made applicable to STPs in McDougall requires that committed persons first ask the director for additional treatment before asking the courts for that treatment. McDougall was decided. It was the appellate court affirmed the trial court's denial of relief, which was a request for transfer to another institution, for two reasons. One of them was that the sexually dangerous person had never asked the director for that transfer in the first instance. And so McDougall itself recognized the importance of asking the director for the relief that the sexually dangerous person later asks the court for. And we agree that, in this case, the Federal Prison Litigation Reform Act does not apply. We are not in Federal court. This is not a Federal claim. Counsel has conceded that there are no constitutional issues. This is not a 1983 action. This is a case under the Sexually Dangerous Persons Act. That's a State law question, whether the director's provision of treatment was adequate under that Act. And the exhaustion doctrine applies to claims or to motions filed under that Act because, first, the department's regulations require all committed persons to file grievances to explain any problems that they have so that the director can go through the grievance process and address those issues. Well, in fact, at the end of part of the analysis in McDougall, the court says the sexually dangerous person bears the burden of demonstrating that he is not being afforded treatment designed to affect his recovery as required under the Act. That seems to indicate that there is some responsibility to address the department. And if the department says, no, you don't need that, then judicial review can happen, and it's a totally different circumstance at that point. Would you agree with that? Your Honor, the director agrees with that, that, first, the sexually dangerous person should address their treatment concerns with providers and the director through the administrative grievance process. And doing so serves the Act's purpose. In McDougall, the court said that the Act grants the director substantial discretion in determining the appropriate treatment for a sexually dangerous person. And allowing the director to address these complaints before they get brought to court would promote administrative autonomy while also serving judicial efficiency for those claims that get resolved favorably to the sexually dangerous person. What type of process goes on? I mean, a grievance is filed. What happens once the grievance is filed? Is a hearing called? What is that hearing comprised of? In some circumstances, there is a hearing. The very first thing that happens is a grievance, first, there's an informal process where a grievance counselor discusses the issues with the grieving party. Then, if that doesn't resolve the issue, there's a grievance officer. There's a formal written grievance submitted to a grievance officer, and that officer has two months to investigate, which may include a hearing, and make a recommendation to the chief administrative officer of the institution. Is it more likely to go to a hearing if the request is denied? Or could it go to a hearing in any case? Well, the hearing would take place before the request is denied. So this is a matter of fact gathering for the grievance officer to make a recommendation to the ultimate decision maker, which is the chief administrative officer. From there, the process goes, if the grievance isn't satisfactorily resolved, the sexually dangerous person could then seek review from the administrative review board, which is appointed by the director, and the director ultimately decides whether to adopt the recommendation of that review board or to decide within six months of getting the appeal from the sexually dangerous person to take some other action. So there are written findings presented or written findings put in the record that a court could review? Is that what would happen? Yes, Your Honor. In fact, the regulation, I believe it's 20 Illinois Administrative Code Section 504.830, or actually 850, I apologize, requires the director to review the report and make a final decision within six months in writing. So that's all of the grievance processes reviewable by the courts, And more importantly, it gives the director, as the agency responsible for administering the act, the opportunity to correct any potential errors in the process or to address the sexually dangerous person's concerns head on and explain why the sort of treatment that the sexually dangerous person is requesting isn't being provided. Now these three providers that Mr. Connolly has referenced, are they part of the Department of Corrections staff or were they independent prior to his charge initially? It appears that the providers that Connolly mentioned in his brief and in the motion were involved in the group counseling process and thus were department employees. But the group counseling process isn't where treatment goals are set. That's in the treatment plan, as Your Honor's mentioned. The treatment plan is actually what is subject to review. The court in the McDougall proceeding reviewed the treatment plan and the factual assertions in the motion, not petition, but the motion that's filed for review of treatment, and make a decision whether additional treatment should be ordered. And that's in the nature of not an indemnus action, not a declaratory judgment, but actually an order in aid of the commitment order. And so that's effectively injunctive relief, Your Honors. That's what's made clear in Castman. In 2015, this court said in Castman that a sexually dangerous person who wants review of their treatment doesn't file a new action with a pleading. They file a motion and make factual assertions that ask the committing court in the commitment proceedings to enter an order in aid of its judgment. In other words, the commitment order tells the director to provide a sexually dangerous person with care and treatment designed to affect recovery. And when a sexually dangerous person files a motion saying that he is not being provided that treatment, the committing court is then tasked with the question, well, what treatment would affect your recovery? And that is why the administrative grievance process is necessary for counselors and psychologists and staff to be able to consider the sexually dangerous person's concerns about their treatment and make a decision on whether or not that treatment they seek should be provided. All right, but listening now to your explanation and looking at filing this type of an action, that grievance process takes about maybe a year by the time the pre-grievance person talks and then the grievance person talks, then the facts are collected in two months, and then the committee looks at it, and then the director has six months. We're close to a year, maybe even beyond a year. And in light of the fact that I think there are about 150-plus persons detained under this Act, isn't it more efficient to go directly to this type of litigation, asking for the review before the administration or the administrative review? It would be more efficient if courts had all at their disposal they needed to make decisions. If the committing court had a record to decide in all circumstances whether or not additional treatment is necessary, then perhaps it would be more efficient. But the statute is intended to grant discretion to the director to make those treatment decisions, and the way to do that is the grievance process. And so really here what the director's arguing is that the committing court should not be in the position of fashioning treatment. That's the director's responsibility, and maybe it takes a little longer for the director to do that, but informed decision-making sometimes takes a little longer. And in the process of treating sexually dangerous persons, it is a process that requires changing attitudes and behaviors. Treatment does take time. It's not something that happens immediately, unfortunately. Well, it's not like Mr. Connolly just got there. He's been there quite some time. Right, and there have been times where he's sought discharge and been denied that because he is not participating in treatment effectively. He's not made it past the initial phases that require him to acknowledge the reasons why he's been committed and be able to deal with his deviant sexual thoughts. And so sometimes it does take longer, but sexually dangerous persons are discharged from the program upon completion. But his argument seems to be, well, I probably could get better if somebody would just give me this treatment I think that has been discussed, whether it be in group or wherever it was discussed, by three different persons who are involved in the process, three different professionals who think, based upon my history, I need this treatment. So why doesn't that trigger some sort of immediate request within the system? Well, Your Honor, discussions occur in group therapy, maybe not directed at the specific individual. It's not clear with that. There's just one statement in the motion and in the briefing saying that these three people said in group therapy, wherein my cycle of abuse was discussed, that substance abuse treatment would be required for my progress in treatment and recovery. Well, that may be true. At some point in the treatment process, general risk factors such as substance abuse might be discussed if evident problems with substance abuse are present. But here we don't even see that. Conley hasn't admitted that he has a substance abuse problem. He has just said that people said that in group therapy. And again, the treatment plan is where goals are set. And he hasn't said anything in his motion about his treatment plan saying that he needs substance abuse treatment, but yet that's not available. And we don't have an appellate court decision saying what the minimum factual assertions must be made to get review of treatment. But we do know that there needs to be some sort of assertion that I've made it as far as I can get in treatment, I've been participating, but yet additional treatment is unavailable to me for some particular reason, or I've been denied release for some reason beyond my control. And here Conley hasn't said that he's completed those initial phases of treatment that require him to acknowledge his past behaviors and thoughts. And the record is replete with instances in which he has denied those offenses despite pleading guilty to possessing child pornography and other issues that he needs to, in treatment, discuss. Again, this action is a motion in the committing court. All of the record on appeal is before the committing judge. And the committing judge should be in a position to consider what's minimally necessary for me to grant an order in aid of my commitment order. And here Conley needed to allege at a minimum that he was being denied, that he had progressed in treatment past those initial phases and gotten to the point where general risk factors such as substance abuse would be addressed. It may be true that eventually substance abuse should be addressed with Mr. Conley. However, he hasn't asserted that he's at that point in treatment. And in order to do that, he would have to have asserted that he has made it past those initial phases that we have several times up to 2015 seen that he has not made it past. Was Judge Beckman on the bench and was he the original judge back in 2005? Your Honor, I believe, let me just double check. I believe that he was. And the point of my question is, is he just operating from a record or is he operating from his knowledge of this, his personal knowledge of this case? Well, Your Honor, to answer your first question, C-103 is an order by Judge Beckman committing Conley in 2006. So it is the same judge. And I can't answer your second question other than to look at the order that's under review here, which is that the court relied on the three reasons that the director offered, one of which was that he had not, Conley had not provided factual assertions necessary to obtain review of his treatment. Let me ask real briefly about the failure to state a cause. What would the, if this was an appropriate action, what does the State believe should be alleged in order to state a cause? Well, it depends on the case, Your Honor, because this is a motion asking for effectively an injunction, an order requiring the director to provide additional treatment. It's not actually called an injunction, but it's an order in aid of the commitment order requiring the director to take an action. So at a minimum here, Conley should have, would have needed to assert that he completed all available treatment and yet was denied release or additional treatment and ask the court to order the additional treatment that the director identified as the reason why he cannot proceed further in treatment. So you're saying that if there are three or four steps or processes or areas of remediation, that in order to state a cause of action, that the sexually dangerous person has to allege that he's complied with the terms of the contract and that the DOC, on the other hand, has not complied with the terms of the contract and therefore he's entitled to bring a cause of action? Because it seems like you're saying that he has to allege that he's complied with all the terms and until he alleges that he's complied with all the other terms that relate to everything but the claim that he's making that he's not getting relief on, that he's failed to state a cause of action. No, I understand. My time has expired. May I answer your question? Yes, please do. Your Honor, it's not just that I agree that he needs to provide some factual assertions that he has complied with the terms of the commitment order and his treatment, and that the director has not complied with the terms of treatment in order to get review of the treatment. But more than just that, because then everyone could get review of the treatment just by broadly asserting that they have complied and the director has not. What Conley and other sexually dangerous persons need to be asserting is they need to engage with the underlying parts of the record showing their need for treatment. So Conley couldn't just say, I'm not being provided this but I've done all I can. Conley would need to say, I have progressed in treatment to this point and I have done these things in treatment and provided the committing court enough to be able to determine that proceedings should move on past this motion, otherwise the motion should be denied. It sounds like you're saying that he has to allege all the conditions preceding to have been complied with on his part. But, yes, Your Honor, to some extent. But, again, this is fact-dependent because this is a motion in the circuit court. So the circuit court would have discretion whether to move on based on what assertion. You keep saying it's a motion. It's kind of novel for me to hear someone talk about whether or not a motion states a cause of action. Your Honor, I do understand that that is a bit of confusion in the briefing and in the circuit court. But this Court's decision in Castman makes clear that this should be treated as a motion. And so I do apologize for any confusion the parties have provided. But just to briefly address, Your Honor, Conley asked for an order declaring his treatment constitutionally inadequate and did not provide any sort of request for a specific treatment in his request for relief in the amended motion. And so the Director asks for that reason and the failure to exhaust that this Court affirm the judgment. Thank you. Mr. Wiggins, you may proceed. Thank you, Your Honor. The first part of rebuttal is in the framework for analysis that counsel just provided. He said that in order for a cause of action to be stated by appellant that he need to first state that he's done everything possible and that he's complied with his treatment plan as much as possible. That's not, in fact, the framework. The framework was handed down in 2015 in Castman, which counsel cites. And what that framework is is a four-prong analysis. One, did in his petition for judicial review of care and treatment, did appellant state that he has a mental disorder or mental health issues which exacerbate his psychosexual symptoms? Yes. Here, that's satisfied by his statement in paragraph 5 of his April 10, 2017 petition, Common Law Record 834 and 835, that he has been told by three separate named treatment providers that he needs to have substance abuse treatment, that he has a substance abuse disorder, and that that is something that is vital to his recovery under the Sexually Dangerous Persons Act. That is a mental health issue which is cited to exacerbate psychosexual symptoms because the treatment provider said it's vital to affect his recovery as required by the SDP Act. The second prong is that IDOC has failed to or refused to provide that treatment. In the same paragraph 5 of that motion, 834 and 835 of the Common Law Record, appellant asserts that IDOC has not provided this treatment, and the State concedes that that treatment's not even given in its written briefs. It concedes that treatment's not even available to those housed in the SDP branch of commitment. And big money. Correct. Yes, Your Honor. Third, that he's otherwise not able to get this treatment. Well, if he's committed and the place at which he's committed does not provide this treatment, it is inherent in that that he cannot then get the treatment. That third prong is satisfied. Fourth prong, that because he doesn't have this treatment, he is unable to recover. This is asserted in the pleadings that it is vital to his recovery. Now, if that went to hearing and the judge then procedurally said, okay, now that we're hearing it, I'm hearing your evidence, I see who you're calling to the stand or not to testify to these assertions you've put forth in your petition, I deny your motion, I don't find that your argument has merit, he could have made that decision there. However, he was premature in dismissing the petition, which is the entire question before the court. Okay. Well, even if it was properly pled, and since I have some knowledge of Casman, I might think it is, if it was properly pled, the hearing on this motion is still not going to provide a trial court or this court with all that's necessary to tell the director that that plan doesn't work because we don't know what the plan is in the beginning. We don't know how it was formulated in the beginning. We know, as a matter of record, the charge that was posed against him, and then a decision was made rather than pursue the charge to pursue this remedy. So we still don't have the information we need that could be provided by an administrative review. And, Your Honor, the way I speak to that is this. If that's true, and it very well may be, then petitioner's petition would fail. And that would be the procedural history. It would stop right there because he's not able to make merit to his claims. It wouldn't have evidentiary value in that hypothetical. However, the question here is, was the trial court in error in deciding that, quasi-making that decision by dismissing the petition in the first place? And it was because there was a cause of action stated where a fact-pleading state, a court must take as true all well-pleaded facts and any reasonable inferences derived therein. That petition asserted facts that satisfied the four-pronged CASMA test, which made the petition sufficient for stating the cause of action. Well, there were a couple of allegations in his petition that really weren't relevant to his treatment, and I would say that the atmosphere in a prison was more correctional than therapeutic. Well, yes, probably. That's not going to support his position. And, Your Honor, the way I would speak to that is, had this gone to hearing, which is the entire big-picture zoom-out point that I'm trying to make, this should have gone to hearing and then been denied if there were derelict pleadings. I'm sorry, allegations in the pleading. Those derelict or deficient allegations could have been stricken. They could have been denied in part. However, prematurely dismissing the petition without letting it go to hearing to make that decision after evidence was shown is where the trial court erred. And I would ask on that basis that the trial court's decision be reversed. Do you understand that we could agree with you that you stated a cause of action, but as Justice Hutchinson, I think, implied and said directly, that that doesn't end the question and that if we determine that you stated a cause of action but there should have been an exhaustion of administrative remedies, we still affirm the judgment? I do understand that that's within your discretion. So you win and lose. You win to the extent that some way, shape, or form you're going to get a hearing, but something may be down the road a little bit further than you'd hoped. Sure. I observe that, Your Honor, and I would just ---- I just wanted to disabuse you of this idea that if we find that you stated a cause of action, you win. No, it doesn't work quite that easily. We'll take the case under advisement until we have other cases on the call at the reassured recess. Thank you, Your Honor.